UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISSA GARCIA, an individual, for the real party in interest, the State of California, and on behalf of other current and former employees<br><br>                              Plaintiff,<br><br>  v.<br><br>COMMONWEALTH FINANCIAL NETWORK; and DOES 1 through 50,<br><br>                              Defendants. | Case No. 20-cv-1483-BAS-LL<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND (ECF No. 8)** |

      In this wage and hour litigation brought under the Private Attorneys General Act, Cal. Lab. Code §§ 2698, *et seq.* ("PAGA"), Plaintiff Marissa Garcia alleges that her former employer, Commonwealth Financial Network (CFN) failed to pay her and others the correct amounts of sick pay and overtime wages. CFN removed the action to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. The Court is asked to decide whether CFN has shown by a preponderance of the evidence that the amount-in-controversy requirement and the complete diversity in citizenship requirement are met. The Court finds Garcia's motion to remand suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For

the following reasons, the Court finds CFN's Notice of Removal is deficient and **REMANDS** this action to the San Diego Superior Court for lack of subject matter jurisdiction.

## I. BACKGROUND[1]

Plaintiff Marissa Garcia worked for Defendant CFN between 2018 and 2019. (Compl. ¶¶ 10, 31, ECF No. 1-2.) Garcia regularly received nondiscretionary incentive payments in the form of bonuses. (*Id.* ¶¶ 29, 40.) Sometimes Garcia worked more than 40 hours in a single workweek. (*Id.* ¶ 39.)

On June 15, 2020, Garcia filed suit in the Superior Court of the California in the County of San Diego, alleging that CFN violated several provisions of the California Labor Code. (Compl., ECF No. 1-2.) Garcia raises nine causes of action: (1) CFN underpaid Garcia and other employees by applying a lower pay rate for the sick leave than what is required under Section 246 of the California Labor Code; (2) CFN underpaid Garcia and other employees by not adequately compensating their overtime hours; (3) CFN issued wage statements that did not include the correct amounts of gross wages; (4) CFN issued wage statements that did not include the correct amounts of net wages; (5) CFN issued wage statements that did not include the correct hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate; (6) CFN failed to keep a duplicate copy of the wage statements; (7) CFN failed to timely pay Garcia and other employees during their employment; (8) CFN failed to pay Garcia and other employees all wages due upon termination or separation of employment; and (9) CFN required Garcia and other employees to sign an unlawful authorization form. (*Id.* ¶¶ 27–114.) As relief, Garcia seeks 25% pro rata share of civil penalties under PAGA. (*Id.*)

---

[1] The facts are taken from Garcia's allegations in the operative complaint (Compl., ECF No. 1-2), which the Court assumes are true. *See Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint.")

On July 31, 2020, CFN removed the action to federal court based on diversity jurisdiction under 28 U.S.C. § 1332. (Notice of Removal, ECF No. 1.) CFN estimated that Garcia's *pro rata* share of the PAGA civil penalties amounts to $30,764.49:

| Causes of Action (COA) | PAGA recovery |
|---|---|
| First COA–Underpayment of sick leave | $1,000.00 |
| Second COA–Underpayment of overtime work | $2,240.79 |
| Third COA–Incorrect gross wages on wage statements | $5,487.50 |
| Fourth COA–Incorrect net wages on wage statements | $5,487.50 |
| Fifth COA–Incorrect hourly rates on wage statements | $5,487.50 |
| Sixth COA–Failure to keep records of wage statements | $5,487.50 |
| Seventh COA–Failure to timely pay during employment | $1,873.70 |
| Eighth COA–Failure to pay wages due upon termination | $2,775.00 |
| Ninth COA–Requiring employees to agree to unlawful terms | $925.00 |
| **Total** | **$30,764.49** |

(*Id.* ¶¶ 29–57)  In addition, CFN estimated that the attorney's fees would exceed $44,235.51, and that the total amount in controversy would exceed the $75,000 threshold. (*Id.* ¶¶ 58–67.)

Garcia now moves to remand the action back to state court. (Mot. Remand, ECF No. 8.) She argues that neither the amount-in-controversy requirement nor the complete diversity of citizenship requirement is satisfied. Garcia's motion is ripe for decision.

## II.     LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Id.* (citations omitted). "[A]ny civil action brought in a State court of which the district courts of the

United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States." 28 U.S.C. § 1441(a).

In order to invoke a district court's diversity jurisdiction, a party must demonstrate that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332; *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). "The burden of establishing federal jurisdiction is on the party invoking federal jurisdiction." *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008); *see also Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106–07 (9th Cir. 2010) ("[I]n a case that has been removed from state court to federal court . . . on the basis of diversity jurisdiction, the proponent of federal jurisdiction—typically the defendant in the substantive dispute—has the burden to prove, by a preponderance of the evidence, that removal is proper.").

## III.  ANALYSIS

### A.  Amount in Controversy

To assert the amount in controversy in the removal notice, a "short and plain" statement need not contain evidentiary submissions and must include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84, 89 (2014). If the plaintiff challenges the defendant's asserted amount in controversy, both sides may submit proof and the court must find by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *Id.* at 88 (quoting 28 U.S.C. § 1446(c)(2)(b)); *see also Schneider v. Ford Motor Co.*, 756 F. App'x 699, 700–01 (9th Cir. 2018) ("The preponderance of the evidence standard applies only after 'the plaintiff contests, or the court questions, the defendant's allegation' and 'both sides submit proof.'"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) (holding that when a complaint "is unclear and does not specify 'a total amount in controversy,' the proper burden of proof . . . is proof by a preponderance of the evidence").

Further, if the existence of diversity jurisdiction depends on the amount in controversy, "[t]he district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335–36 (5th Cir. 1995)). If not, a court may consider facts in the removal notice, and it may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.*

The amount in controversy is "not a prospective assessment of [a] defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Rather, it is the "amount at stake in the underlying litigation." *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005). In assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). "In that sense, the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (citing *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018)).

Garcia argues that her individual potential recovery, including her pro rata share of the PAGA civil penalty and attorney's fees, would not meet the $75,000 threshold that is required to invoke federal diversity jurisdiction under 28 U.S.C. § 1332(a).

### 1. Civil Penalties under PAGA

Garcia argues that CFN overestimated her pro rata share of civil penalties under PAGA by double-stacking mutually exclusive civil penalties for each independent Labor Code violation. The Court looks to California law to resolve questions of substantive law. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("[F]ederal courts sitting in diversity cases, when deciding questions of substantive law, are bound by state court decisions as well as state statutes."). "Under the [California] Labor Code, the Labor and Workforce

Development Agency (LWDA) and its constituent departments and divisions are authorized to collect civil penalties for specified labor law violations by employers." *Home Depot U.S.A., Inc. v. Superior Court*, 191 Cal. App. 4th 210, 216 (2010). "To enhance the enforcement of the labor laws, the Legislature enacted PAGA in 2003." *Id.* Under PAGA,

> any provision of [the California Labor] code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees[.]

Cal. Lab. Code § 2699(a). "In addition, to address violations for which no such penalty had been established, subdivision (f) of the statute created 'a default penalty and a private right of action' for aggrieved employees." *Home Depot U.S.A.*, 191 Cal. App. 4th at 216. If an employer has one or more employees, the default civil penalty is $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation. Cal. Lab. Code § 2699(f).

An aggrieved employee who succeeds in their PAGA claim is entitled to 25% of the civil penalties[2] and attorney's fees and costs. Cal. Lab. Code § 2699(g)(1), (i). A plaintiff's entitlement to PAGA penalties cannot be aggregated with the penalties owed to other employees in order to reach the jurisdictional threshold. *Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118, 1122–23 (9th Cir. 2013). In addition, the Court may only consider the 25% share allotted to the PAGA plaintiff, and not the 75% that is allotted to the government, for the purposes of calculating the amount in controversy required to establish original diversity jurisdiction. *Steenhuyse v. UBS Fin. Servs., Inc.*, 317 F. Supp. 3d 1062, 1069 (N.D. Cal. 2018)

The Court examines Garcia's nine causes of action in turn to estimate her 25% pro rata share of civil penalties under PAGA.

---

[2] The remaining 75% is distributed to the California Labor Workforce Development Agency ("LWDA").

- 6 -

### i. First Cause of Action: Paid Sick Leave

Garcia's first cause of action alleges that CFN violated section 246 of the California Labor Code. That provision requires the employer to provide its employees with a certain number of paid sick days. Cal. Lab. Code § 246. Section 248.5 specifically provides for the civil penalties for the violation of section 246. Under that enforcement article, the penalty is assessed at "a sum of fifty dollars ($50) for each day or portion thereof that the violation occurred or continued, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Lab. Code § 248.5(b)(3). CFN assumes that Garcia took one day of sick leave per pay period and estimates the penalty is $300, the 25% pro rata share of which equals $75. (*See* Def.'s Notice of Removal ¶ 33, ECF No. 1.) The Court estimates the same amount, $75, as Garcia's pro rata share of PAGA civil penalty for her first cause of action. Because the enforcement provision specifically provides for civil penalties, Garcia's PAGA recovery would be under section 2699(a), and not under section 2699(f). *See* Cal. Lab. Code § 2699(f) (stating that the default civil penalty set forth in subdivision (f) applies to all provisions of the Labor Code "except those for which a civil penalty is specifically provided").

Therefore, the civil penalty that may form a part of the amount in controversy for Garcia's first cause of action is limited to $75.

### ii. Second Cause of Action: Overtime Wages

Garcia's second cause of action is brought under sections 510, 558, 1194, and 1198 of the California Labor Code and the wage orders issued by the Industrial Welfare Commission (IWC)[3] governing compensation of overtime work.

Garcia is eligible to recover her pro rata share of the civil penalty for CFN's violation of section 1198 under section 2699(f) of the Labor Code. The Labor Code itself does not

---

[3] The IWC was enacted in 1913 "to regulate the wages, hours, and working conditions of various classes of workers to protect their health and welfare." *Home Depot U.S.A.*, 191 Cal. App. 4th at 217. "To this end, the IWC promulgated so-called 'wage orders,' which prescribe 'minimum requirements with respect to wages, hours and working conditions' for workers in a number of industries and occupations." *Id.*

itself specifically provide the amount of civil penalty to be assessed for violations of section 1198. *See Home Depot U.S.A.*, 191 Cal. App. 4th at 218 (holding that the civil penalty for violating an IWC wage order is not specifically provided for a cause of action brought under section 1198 for a violation of an IWC wage order). Therefore, the default civil penalties set forth in section 2699(f) apply. *See id.*

CFN estimates the civil penalties at $3,700, and Garcia's 25% pro rata share at $925.00. Garcia argues that CFN's assumption that it violated the overtime provision during all nineteen pay periods, when Garcia's Complaint does not state so, is erroneous and results in an inflated amount of civil penalties. In fact, Garcia's Complaint only lists a single violation during one pay period beginning on June 24, 2019, and ending on July 7, 2019, as an example. Where, as here, neither the plaintiff's pleading nor the defendant's removal documents establish the basis for calculating the amount in controversy, the Court may require the parties to submit evidence. *E.g.*, *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) (vacating the district court's order to remand the action to state court and remanding to district court for consideration of evidence about the applicable violation rate). Doing so would be unnecessary if the maximum amount in controversy calculated based on a 100% violation rate would not amount to $75,000. For the purposes of this Order, the Court uses the 100% violation rate to find that the maximum pro rata share of the PAGA civil penalty under section 2699(f) attributable to Garcia's second cause of action is $925.00.

CFN's removal also considers penalties under section 558 of the California Labor Code, which assesses a penalty of $50 for initial violation of an IWC order and $100 for each subsequent violation. Cal. Lab. Code § 558(a). Those penalties are "in addition to any other civil or criminal penalty provided by law." Cal. Lab. Code § 558(d); *Guifu Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15, 2012). CFN estimates the civil penalties under section 558 at $1,850, again assuming a 100% violation rate, and 25% of that amount equals $462.50. The Court finds

that $462.50 is the maximum pro rata share of civil penalty under section 558(a) that Garcia may recover under section 2699(a).[4]

Although CFN's removal considered liquidated damages under section 1194.2, that provision is not applicable to the present action. Section 1194.2 applies only where the minimum wage provision of the Labor Code is placed at issue. *See* Cal. Lab. Code § 1194.2; 1 M. Kirby C. Wilcox, *California Employment Law* § 5.40 (2020) ("An employee may not recover liquidated damages for failure to pay overtime compensation."). Here, Garcia does not allege that CFN failed to pay minimum wages. Thus, the Court does not consider the liquidated damages as a part of the amount in controversy.

Adding the pro rata share of the civil penalties for the violations of sections 1198 and 558, the maximum PAGA recovery that encompasses Garcia's second cause of action is $1,387.50.

### iii.   Third through Sixth Causes of Action: Wage Statements

Garcia alleges that CFN violated subdivision (a) of section 226 of the Labor Code, which requires the employers to accurately state certain information (gross wages, net wages, and hourly rates, among others) on the wage statements and keep a duplicate of any wage statement provided to an employee. Garcia seeks civil penalties "under sections 2699(f), 226.3, and any other applicable statute allowing recovery of penalties under PAGA." (Compl. ¶¶ 57, 66, 76, 84.)

The initial issue is whether Garcia may recover civil penalties under section 2699(a) or under section 2699(f). A district court within this circuit has held that "Cal. Lab. Code § 226.3 penalties are applicable as the appropriate measure of civil penalties under PAGA" for all violations of section 226. *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058,

---

[4] Section 558 states that an employee may recover $50 for the initial violation or $100 for each subsequent violation, "in addition to an amount sufficient to recover underpaid wages." Cal. Lab. Code § 558(a)–(b). The Court does not consider the amount of underpaid wages as a part of the amount in controversy because "the civil penalties a plaintiff may seek under section 558 through the PAGA do not include the 'amount sufficient to recover underpaid wages.'" *ZB, N.A. v. Superior Court*, 8 Cal. 5th 175, 182 (2019).

1109 (N.D. Cal. 2019) (construing *Raines v. Coastal Pac. Food Distributors, Inc.*, 23 Cal. App. 5th 667 (2018)). Because section 226.3 specifically provides for the applicable civil penalties, the default civil penalty set forth in section 2699(f) does not apply, and Garcia may recover her share of the civil penalties under section 2699(a). Section 226.3 provides that the applicable civil penalty for a violation of section 226 is

> two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records.

Cal. Lab. Code § 226.3.

CFN assumes that every wage statement Garcia received during her employment violated section 226(a). Based on that assumption, CFN estimates the civil penalty for each cause of action brought under section 226 to be $18,250, 25% of which equals $4,562.5. CFN's assumption is erroneous because Garcia's Complaint is silent and ambiguous as to the exact frequency of the alleged violations. CFN does not offer evidence that supports the assumed violation rate of 100%. "[W]here the Complaint is considered ambiguous regarding the frequency with which § 226(a) violations occurred, the Court cannot resolve that ambiguity in favor of federal jurisdiction." *Riddoch v. McCormick & Schmicks Seafood Restaurants, Inc.*, No. CV0907127ODWMANX, 2010 WL 11520546, at *3 (C.D. Cal. June 28, 2010). Because Garcia's Complaint is silent as to the violation rate, as was the case in *Riddoch*, the Court declines to resolve the ambiguity in favor of removal.

Moreover, CFN has not shown that the $1,000 penalty rate applies here. Section 226.3 assesses $1,000 "per employee for each violation **in a subsequent citation**." Cal. Lab. Code § 226.3 (emphasis added). In comparison, other provisions of the Labor Code that assess higher amounts of civil penalties for cumulative violations use the word, "subsequent violation," without mentioning a subsequent citation. *E.g.*, Cal. Lab. Code §§ 210(a)(2), 558(a)(2), 2699(f)(2). A district court within this circuit has reasoned that the plain reading of the statutory language used in section 226.3 dictates that a $1,000

penalty rate applies only where the existence of "subsequent citations" are alleged. *Snow v. United Parcel Serv., Inc.*, No. EDCV20025PSGAFMX, 2020 WL 1638250, at *4 (C.D. Cal. Apr. 1, 2020). In *Snow*, the court found that the defendant erred in applying the $1,000 penalty rate to the assumed subsequent violations, where the plaintiff has not pleaded the occurrence of an initial citation nor the defendant has offered evidence of one. *Id.* The facts are analogous here. Garcia has not pleaded that an initial citation occurred nor has CFN alleged so. Therefore, the Court applies the $250 penalty rate for the assumed section 226 violations to calculate Garcia's maximum recovery under PAGA.

Assuming that all wage statements Garcia received breached section 226, nineteen violations multiplied by the $250 penalty rate equals $4,750, and 25% of that amount is $1,187.5. Thus, Garcia's maximum pro rata share of civil penalties that encompasses her third through sixth causes of action is $4,750 (4 × $1,187.5).

### iv. Seventh Cause of Action: Timely Payment

In her seventh cause of action, Garcia alleges that CFN violated section 204 of the California Labor Code by failing to timely pay the earned wages. Section 210 specifically establishes civil penalties for violations of section 204. *Cabardo v. Patacsil*, No. 212CV01705TLNKJN, 2020 WL 2468197, at *7 (E.D. Cal. May 13, 2020). Under section 210, a defendant who violates section 204 is subject to a penalty as follows:

> (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee.
>
> (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

Cal. Lab. Code § 210(a). "An employee is only entitled to either recover the statutory penalty provided for in [section 210] or to enforce a civil penalty as set forth in subdivision (a) of Section 2699, but not both, for the same violation." Cal. Lab. Code § 210(c).

CFN assumes that Garcia claims $19.96 in unpaid wages for each of the 19 pay periods. (Notice of Removal ¶ 52.) Assuming a violation rate of 100%, the maximum civil

penalties that may be assessed for Garcia's seventh cause of action is \$3,794.81 (\$100 × 1 + \$200 × 18 + 25% × (\$19.96 × 19)).  The 25% pro rata share of that amount is \$948.70.  Therefore, the maximum civil penalty that may form a part of the amount in controversy for Garcia's seventh cause of action is limited to \$948.70.

### v.     Eighth Cause of Action: Unpaid Wages at Departure

Garcia's eighth cause of action alleges that CFN failed to pay Garcia all wages upon her departure from employment.  Depending on the reason for her departure, an aggrieved employee may sue under one of the two provisions of the Labor Code to challenge the former employer's failure to timely pay the unpaid earned wages.  Section 201 of the Labor Code applies to involuntary resignations, that is, when the employer discharges the employee. Cal. Lab. Code § 201.  Section 202 applies to voluntary resignations. Cal Lab. Code § 202.  Although CFN argues that civil penalties for both sections 201 and 202 should be considered in estimating the amount in controversy, Garcia cannot both have been involuntarily discharged and have voluntarily resigned from her employment with CFN.  Therefore, the Court will only consider the pro rata share of civil penalty for one violation, of either section 201 or 202, in calculating the amount in controversy for Garcia's eighth cause of action.  Garcia and CFN agree that Garcia may recover her pro rata share of the civil penalties under section 2699(f).  The default penalty for the initial violation under section 2699(f) is \$100.  The 25% pro rata share of that amount is \$25.

The Labor Code also provides a specific penalty for the willful violation of section 201 or 202.  That provision "imposes up to thirty days' wages as a penalty on an employer who 'willfully fails to pay' wages owed to a former employee." *Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 553 (E.D. Cal. 2010).[5]  To the extent that a willful violation of section

---

[5] The statute states in full:
> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, . . . [or] 202, . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Lab. Code § 203(a).

201 or 202 constitutes a separate violation for which Garcia is eligible to recover civil penalties under PAGA, she may do so under section 2699(a). Neither party alleges, or provides evidence of, the length of the delay.

Courts have used the statutory maximum penalty for the purpose of calculating the amount in controversy by crediting the employee as working full-time (40 hours per week or 8 hours per day) during the thirty-day period. *See, e.g.*, *Adkins v. J.B. Hunt Transp., Inc.*, 293 F. Supp. 3d 1140, 1146 & n.5 (E.D. Cal. 2018); *Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1139 (N.D. Cal. 2016) (estimating the civil penalty for the section 203 claim by multiplying the plaintiff's hourly rate of pay by an eight-hour workday over thirty days). Here, CFN offers evidence that Garcia's hourly rate was $19.96. (Decl. of Ellen Rosenberg ¶ 11, ECF No. 1-4.) Applying that hourly rate to an eight-hour workday for the thirty-day period, the maximum civil penalty that Garcia may recover under section 203 is $4,790.4 ($19.96/hour × 8 hours per day × 30 days). Garcia's 25% pro rata share of that amount is $1,197.6.

Adding the two amounts ($25 and $1,197.6) together, the Court finds that the maximum pro rata share of civil penalty that may form a part of the amount in controversy for Garcia's eighth cause of action is $1,222.6.

### vi. Ninth Cause of Action: Unlawful Form

Garcia's ninth cause of action alleges that CFN violated section 432.5 of the Labor Code by requiring her to sign an unlawful form as a part of her employment. Garcia and CFN agree that Garcia's 25% share of the PAGA civil penalty applicable to Garcia's ninth cause of action is $925.00.

Based on the foregoing calculations, the amount in controversy for Garcia's asserted claims, exclusive of attorney's fees, is at most $9,308.80, which is much less than CFN's estimation of $30,764.49, on which CFN based its removal.

//

//

| Causes of Action (COA) | Maximum PAGA Recovery |
|---|---|
| First COA–Underpayment of sick leave | $75.00 |
| Second COA–Underpayment of overtime work | $1,387.50 |
| Third COA–Incorrect gross wages on wage statements | $1,187.50 |
| Fourth COA–Incorrect net wages on wage statements | $1,187.50 |
| Fifth COA–Incorrect hourly rates on wage statements | $1,187.50 |
| Sixth COA–Failure to keep records of wage statements | $1,187.50 |
| Seventh COA–Failure to timely pay | $948.70 |
| Eighth COA–Failure to pay wages due upon termination | $1,222.60 |
| Ninth COA–Requiring employee to agree to unlawful terms | $925.00 |
| **Total** | **$9,308.80** |

### 2. Attorney's Fees

Garcia also seeks attorney's fees under sections 1194 and 2699(g) of the Labor Code. (Compl. ¶¶ 36, 48–49, 58, 67, 77, 85, 95, 105, 114.) Garcia estimates that the recoverable attorney's fees are $22,000, whereas CFN estimates that attorney's fees alone would exceed $75,000, which is equivalent to 250 hours billed at an hourly rate of $300. "The amount in controversy includes . . . attorney's fees, if authorized by statute or contract." *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). "[T]he measure of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred." *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002). Such estimations should be conservative estimates. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir.2007). In the context of a PAGA action, courts consider only the plaintiff's pro rata share of attorney's fees in assessing the amount in controversy. *See Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 850 (9th Cir. 2020) (finding that the plaintiff's pro rata share of civil penalties, including attorney's fees, was not greater than the $75,000 jurisdictional threshold). "The amount of fees commonly

incurred in similar litigation can usually be reasonably estimated based on experience." *Brady v. Mercedes–Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002).

"Courts have 'held that a reasonable rate for employment cases is $300 per hour' and '100 hours is an appropriate and conservative estimate' of the number of hours expended through trial for an employment action." *Adkins v. J.B. Hunt Transp., Inc.*, 293 F. Supp. 3d 1140, 1148 (E.D. Cal. 2018) (citing *Sasso v. Noble Utah Long Beach, LLC*, No. CV 14-09154-AB AJWX, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) (collecting cases)). In a recent action, a federal court in California applied 100 billable hours at an hourly rate of $300 as a basis for reasonable and conservative estimate of the attorney's fees in an employment litigation involving claims of wage and hour violations, discrimination, and wrongful termination. *See Adkins*, 293 F. Supp. 3d at 1148.

Based on the Court's experience in similar cases, the Court finds that $30,000, or 100 hours of attorney's time multiplied by a billing rate of $300 per hour, is a reasonable and conservative estimate to litigate Garcia's wage and hour claims through trial. CFN assumes that litigating this case would necessitate Garcia to incur more than 250 hours of billable hours without explaining why. The various cases that CFN cites in its removal do not provide a better benchmark to guide the Court's decision because those cases are either not as recent or not decided by a federal district court in California. Although CFN lists examples of attorney's fees awarded to Garcia's counsel in other PAGA actions, CFN does not provide information about those cases that would help this Court to calculate the pro rata share of attorney's fees in the present action.

The Court finds that the amount in controversy of Garcia's claims is estimated at $39,308.80, which is a sum of the estimated pro rata share of PAGA civil penalties ($9,308.80) and the estimated attorney's fees ($30,000). Because CFN, as the removing party, has not met its burden to show by a preponderance of the evidence that the amount in controversy is greater than the $75,000 jurisdictional threshold, the Court finds that it lacks original diversity jurisdiction under 28 U.S.C. § 1332. *See Estate of Lhotka*, 599 F.3d at 1106–07. Therefore, CFN's removal was improper.

### B. Complete Diversity of Citizenship

Having found that the amount in controversy requirement is not met, the Court need not resolve whether the parties are completely diverse. *See* 28 U.S.C. § 1332 (requiring both an amount in controversy greater than $75,000 and a complete diversity of citizenship to establish federal diversity of citizenship jurisdiction).

## IV. CONCLUSION

Because Defendant fails to establish diversity jurisdiction as required by 28 U.S.C. §§ 1332 and 1441, the Court **REMANDS** this action to the San Diego Superior Court for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

**IT IS SO ORDERED.**

**DATED: November 24, 2020**

Hon. Cynthia Bashant
United States District Judge